By the Court.
This is an error proceeding prosecuted by the city of Lima against the public utilities commission, and grows out of the inability of the city of Lima and The Lima Natural Gas Company to agree upon rates to be charged by the company.
The city of Lima, in 1921, passed ordinance No. 10099, fixing the following rates to be charged by The Lima Natural Gas Company for the period of three years:
For the first 5,000 cubic feet, per month, 55 cents per thousand.
For the next 5,000 cubic feet, per month, 60 cents per thousand.
For the next 5000 cubic feet, per month, 65 cents per thousand.
For all over 15,000 cubic feet, per month, 75 cents per thousand.
The Lima Natural Gas Company did not accept the terms of this ordinance, but appealed therefrom to the public utilities commission.
The public utilities commission after a full hearing fixed these rates:
For the first 5,000 cubic feet, per month, $1.00 per thousand.
For the next 5,000 cubic feet, per month, $1.05 per thousand.
For the next 5,000 cubic feet per month, $1.10 per thousand.
*381 For all over 15,000 cubic feet, per month, $1.15 per thousand.
Minimum charge, $1.25 per month.
Counsel for the city has specified under separate headings the various grounds upon which he relies for the reversal of the order of the public utilities commission, his first ground being that “The Public Utilities Commission had no jurisdiction to hear or determine the appeal of The Lima Natural Gas Company herein.”
This contention is based upon the fact that The Lima Natural Gas Company, upon the same date that it filed its appeal to the public utilities commission, began an action in the court of common pleas of Allen county against the city of Lima to restrain the city from enforcing the provisions of the ordinance appealed from, and it is the contention of counsel for the city that in the filing of the petition to restrain the city from enforcing the rates provided in the ordinance, and in its prayer for general relief, The Lima Natural Gas Company conferred upon the court ‘ ‘ equal powers with the Utilities Commission to fix rates.”
The courts have no power to fix rates other than as a condition to an interlocutory order, pending final judgment, and no power to enforce the rates so fixed other than to withhold or revoke the interlocutory order upon the failure of the party in whose behalf the order is issued to comply therewith; and upon final order the extent of their power is to restrain the enforcement of a rate' so unreasonably low as to amount to confiscation.
*382 Counsel for the city, by reason of the fact that the city of Lima is operating under a charter and the city commission under the charter has approved the rates fixed by the council, further contends that thereby under the home-rule provision of the constitution the utilities commission is without jurisdiction. While this court has never been in entire accord upon this proposition, the majority of the court have repeatedly held that the home-rule provision of the constitution is not effective to deprive the utilities commission of the jurisdiction conferred upon it by statute in cases where the rate enacted by the municipality has not been accepted by the utility company and the contractual relation therefore has not been established.
The second ground for reversal contended for by counsel for the city is that “The Public Utilities Commission erred in permitting and sanctioning the agreement secretly entered into between The Medina Gas & Fuel Company and The Lima Natural Gas Company, for forty-five cents per thousand cubic feet of gas, and in making said alleged contract price the basis of cost to consumers in this city.”
There being no evidence in the record of such secret agreement the court will ignore it.
This court in the case of The Ohio Mining Company v. Public Utilities Commission, ante, 138, held: “The public utilities commission may investigate and determine whether such contract is just and reasonable to the public utility by the standard of the cost of production by such public utility, or by the standard of the price at which such public utility *383 may be able to purchase such product from other persons or corporations, or both.”
The record in this case necessarily does not disclose the cost of production, and fails to disclose any sufficient source of supply available to The Lima Natural Gras Company or the City of Lima other than that controlled by The Medina Gras & Fuel Company.
The next assignment of error is “The Public Utilities Commission erred in finding as to the amount of gas that would be delivered in the city of Lima to consumers during each of the next three years from September 1, 1921,” the contention of counsel for the city of Lima being, that, inasmuch as the amount of gas consumed in the past has been greater than the amount which the commission found would be consumed in each of the next three years, the finding of the commission in that respect was unreasonable.
The theory of the public utilities commission was that by reason of the higher rate which it found necessary to fix, many consumers would discontinue the use of the product for other and cheaper fuel, and that greater economy would be exercised in the amount consumed by those continuing the service. Necessarily its estimate had to be based largely upon conjecture, and upon that subject with its experience with like situations in other localities it was in better position to conjecture than is the court, and its esti-. mate does not appear to this court to be unreasonable.
The next assignment of error is: “The Public Utilities Commission erred in fixing the prices, rates *384 and charges to he charged by the said The Lima Natural Gas Company to consumers of its product.”
Counsel for the city bases his argument as to consumption for each of the next three years upon the consumption in the past at the lower rate. His premises being wrong his conclusions necessarily are also wrong.
The ordinance of the city having provided that ‘ ‘ the company may fix and collect a minimum charge of fifty cents per month from each consumer,” the minimum charge became a part of the rate appealed from, and the jurisdiction of the public utilities commission over the subject of rates included the rate on the minimum charge.
The next assignment of error is: “The Public Utilities Commission erred in finding that The Lima Company had no other available source of supply of gas than The Medina Company.”
The record discloses that a witness, who is described as “a good farmer and big farmer,” and as the President of The Roundhead Gas & Light Company, testified that at the time these proceedings were instituted The Roundhead Gas & Light Company had a number of thousands of acres of land in the vicinity of Roundhead, under lease for gas and oil; that at that time there were not over three gas wells in the territory; that he knew nothing about the gas business as such; that he did not know whether there was sufficient gas there to warrant the marketing of that gas to Lima, or not, and that he thought if they got more gas somebody would buy it. The record also discloses the fact that The Lima Natural Gas Company had investigated this field. Upon that showing this assign *385 ment of error is based, there being no showing that a sufficient supply of gas exists in the Roundhead district to warrant its conveyance to the city of Lima. This court cannot say that the failure of the public utilities commission to base its rate upon the price at which such gas could be purchased is either unreasonable or unlawful.
The next assignment of error is: “The Public-Utilities Commission erred in allowing leakage in the amount of fifteen per cent.”
This, like the amount of consumption, is a matter of conjecture, and this court will not substitute its judgment in that respect for the judgment of the better informed public utilities commission.
The last assignment of error is: “ There are other errors in the findings, orders and decrees of the Public Utilities Commission.”
Under this assignment counsel for the city refers to the fact that the valuation fixed by the public utilities commission is in excess of the valuation filed by The Lima Natural Gas Company with the tax commission of Ohio for taxation purposes. The valuation filed with the tax commission for taxation purposes was a proper subject for the consideration of the public utilities commission, and in .so far as the record discloses anything upon that subject it shows its consideration by the public utilities commission, but the duty of the public utilities commission in that respect was to find its actual valuation used and useful, and, if there be such discrepancy between the valuation found by the public utilities commission and the valuation filed with the tax commission as to warrant action in that respect, that is *386 a subject for the cohsideration of the tax commission.
The other contentions of counsel for. the city un-. der this heading go to the payment in 1918 and 1919 of a dividend of ten per cent, upon the capital stock. The record, however, discloses that in 1920 the utility was operated at a loss and that the ten per cent, dividend in the year 1918 and the like amount in 1919 were the only dividends paid upon the capital stock during a period of twenty years.
The other subject discussed under this heading is the disposition of the sum of $17,500, collected upon a “readiness to serve charge,” which this court, in the case of Lima v. Public Utilities Commission, 100 Ohio St., 416, held The Lima Natural Gas Company under its contract with the city was not entitled to charge.
The public utilities commission was without jurisdiction to make any order in respect to the return of this fund, and this court in this case is. alike without jurisdiction in that respect.
The order of the public utilities commission will be affirmed.

Order affirmed.

Marshall, C. J., Hough, Robinson, Jones, Matthias and Clark, JJ., concur.
Wanamaker, J., dissents.